```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                        15 CR 861 (JMF)

ROBERT OLINS,

            Defendant.

------------------------------x
                                      New York, N.Y.
                                      December 16, 2015
                                      3:00 p.m.

Before:

                  HON. JESSE M. FURMAN,

                                      District Judge




                         APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
ANDREA GRISWOLD
CHRISTINE I. MAGDO
    Assistant United States Attorneys


DANIEL E. WENNER
    Attorney for Defendant
```

1          (In open court; case called)

2          THE COURT:  We are here for arraignment and initial
3 conference in this matter.

4          Mr. Olins, my name is Jesse Furman.  I'm a United
5 States District Judge here in the district and have been
6 assigned your case.  That means I will preside over it through
7 trial if it goes to trial.  In the event it gets to sentencing,
8 then I will be the judge who sentences you.

9          The purpose of today's proceeding, as I mentioned, is
10 to arraign you on the indictment and to set a schedule for the
11 next portion of the case.

12          Before we do that, let me just say the following:  As
13 counsel probably know, I was Assistant United States Attorney
14 in this district until the spring of 2012.  I mention that only
15 because, given the dates of the alleged offense in this case, I
16 wanted to disclose that and make clear, to my knowledge, I had
17 nothing to do whatsoever with any investigation, let alone
18 prosecution of this matter.

19          Ms. Griswold, do you have any reason to believe
20 otherwise?

21          MS. GRISWOLD:  No, your Honor.

22          THE COURT:  I also want to disclose that Ms. Griswold
23 was actually my intern.  I, actually, don't remember what year.
24 But many years ago, when she was in law school, she served as
25 an intern when I was at the United States Attorney's Ofice.

             I don't see any reason why either of those should
result in my disqualification.  If you believe otherwise,
Mr. Wenner, you may make a motion on that issue.  Any such
motion would be due two weeks from today, and we will set a
schedule for any other motions thereafter.

             With that, unless there is anything that counsel needs
to raise, we will proceed to the arraignment.

             Mr. Olins, would you please rise.

             Have you seen a copy of the indictment, 15 CR 861,
charging you with various crimes, including obstruction of
justice, conspiracy to obstruct justice, conspiracy to commit
bank fraud, bank fraud, and money laundering?

             THE DEFENDANT:  I have.

             THE COURT:  Have you discussed it with your lawyers?

             THE DEFENDANT:  Yes, I have.

             THE COURT:  Would you like me to read the indictment
out loud, or do you waive its public reading?

             THE DEFENDANT:  I waive that.

             THE COURT:  How do you plead at this time; guilty or
not guilty?

             THE DEFENDANT:  Not guilty.

             THE COURT:  Ms. Griswold, what can you tell me about
the case?  I have reviewed the complaint and the indictment,
but if you can give me a little background, that would be
helpful.

1          MS. GRISWOLD:  Yes, your Honor.

2          As set forth in the complaint and the indictment, this
3    case arises out of a prior SEC disgorgement judgment against
4    the defendant for approximately 3.5 million and the SEC's
5    subsequent efforts to collect on that judgment.  As set forth
6    in both of the charging documents, the defendant had an arts
7    and antiques collection.  A receiver was appointed,
8    specifically Judge Cote, here in the Southern District, to
9    oversee the process of selling items from that collection in
10   order to satisfy the SEC's judgment, as well as a prior first
11   security interest that AB&T, a bank in Oklahoma, had on that
12   collection.  This case arises from two items in that collection
13   that the government believes there was fraud that occurred with
14   respect to those transactions; specifically, the sale of a set
15   of vases in or about 2012; and then, subsequently in 2012, as
16   well, the sale of a dragon candelabra.  Essentially, the
17   offense conduct is that the defendant conspired with an
18   individual at an auction company, an arts and antiques company,
19   here in New York to deceive the receiver and the Court into
20   approving the sale of those items at certain prices when in
21   fact the defendant and the individual from the auction house
22   referred to in the charging instruments as CC-1 knew those
23   items were of much greater value and had an agreement to split
24   the overage, if you will.

25         The defendant was charged by complaint in four counts

on August 25th and arrested on August 26th of this year. The defendant was released on bail on September 25th. Two order of continuance were entered for 30-day periods on September 28th and then on October 28th. A two-week order of continuance was entered on November 30th, and the defendant was indicted this past Monday, on December 14th, on the four charges contained in the complaint, as well as an additional count of money laundering.

In terms of the discovery in this case, there are a couple of different categories. There is a database of documents that underlie the SEC actions in this case, both the contempt proceeding, as well as the underlying securities fraud action from 2007. They include documents produced by AB&T, documents produced by the auction house, as well as documents produced by the person named in the charging instruments as individual two. It is about 12,000 documents. It is a very over-inclusive set of documents, I would say, in terms of the narrow two transactions named in our charging instruments, but they are all documents that we would see as producing under Rule 16. In addition, we have bank records for two accounts, as well as obviously the complaint and indictment, which we have already produced.

We would typically ask for two weeks, but we would ask for until Friday, January 8th, to produce discovery, just given the holidays.

1             I'm happy to answer any other questions.

2             THE COURT:  Sure.  Thank you for that thorough

3    recitation.

4             Number one, any post-arrest statements?

5             MS. GRISWOLD:  No, your Honor.

6             THE COURT:  And with respect to the 12,000 or so

7    documents, are those in electronic form?

8             MS. GRISWOLD:  They are.  We have had communication

9    with defense counsel about the best way to get them those

10   documents.  They are currently in a Concordance database, and

11   we have communicated with Mr. Wenner about providing them to

12   defense counsel in that format, which seems to be something

13   that is going to work for them, although We haven't done that

14   yet.

15            THE COURT:  Okay.  Will that be in a format or form

16   that they could then search, or is there some way that they

17   could identify or you could help identify documents within the

18   universe?  It sounds over-inclusive, by your own

19   acknowledgment; that is to say, I imagine there is plenty in

20   there that is frankly irrelevant to the charges here.  In that

21   regard, I imagine it might be helpful if they don't have to go

22   through necessarily one by one to identify the ones that are

23   actually relevant.  Is there some way that they would be able

24   to do that with or without your assistance?

25            MS. GRISWOLD:  Without our assistance at this point,

no, but we can certainly give some thoughts to potentially adding some tags to that database to flag for them the documents that are most closely related to the facts at issue here. I know that is something that we have done in the past, so that when they open the database, they can sort by the documents that have been tagged. And it is searchable; that they can also search by search terms, using some of the ones that would be obvious in this case.

THE COURT: You know better than I what the documents and universe of documents looks like, and I would encourage you guys to discuss it. If there are ways to facilitate things, I'm sure they would be appreciated.

I take it that there are entities or individuals who would qualify as crime victims for the purposes of the Crime Victims Rights Act here; is that correct?

MS. GRISWOLD: I think, your Honor, AB&T Bank would certainly.

THE COURT: Is there a process in place to notify them and anyone else who would qualify as a victim of their rights under the act?

MS. GRISWOLD: We will put that in place, your Honor.

THE COURT: Please make sure you do that sooner rather than later.

All right. Anything else?

MS. GRISWOLD: No, your Honor.

1           THE COURT:  All right.  Mr. Wenner, my general
2    practice, in case you don't know, is to set a deadline for the
3    filing of any defense motions other than any motion for
4    disqualification, which I have already addressed.  After any
5    such motion would be fully submitted, I will have you guys back
6    for a conference, at which I would address any motions and we
7    would then set a trial date at that time.
8           First, let me say I will direct the government to
9    produce all discovery in its possession by January 8th of 2016.
10   To the extent, Ms. Griswold, you can begin production even
11   before that date, I would appreciate if you would do that; that
12   is to say, that is the deadline, but I would encourage you to
13   produce things on a rolling basis if that is feasible.
14          In light of that deadline and what you have heard,
15   Mr. Wenner, I guess the question for you is when you would be
16   prepared to file any motions that you might want to bring.
17          MR. WENNER:  Your Honor, may I ask, when you say
18   motions, do you mean discovery motions, motions in limine, that
19   sort of thing, as well?
20          THE COURT:  Discovery motions I suppose would be
21   included, although I would point you to local Rule 16.1, if
22   you're not familiar with it, that requires you to confer with
23   the government before bringing any discovery-related motion,
24   including a motion for a bill of particulars, and requires an
25   affidavit indicating that you have done that.  And I would tell

1     you that I would deny any motion that is not accompanied by
2     that affidavit. But by motion, I mean motions to suppress,
3     motions to dismiss the indictment, discovery motions, again
4     assuming they're in compliance with the local rules and so
5     forth. Motions in limine or things that would probably be
6     raised by motions in limine can be done closer to trial in
7     connection with a motion in limine schedule.
8              MR. WENNER: Your Honor, I think if we receive the
9     documents by January 8th and if the government is able to help
10    us kind of segregate the wheat from the chaff as far as what is
11    going to be germane to this case, I think that we would be able
12    to file the motions that you're alluding to probably within a
13    month after that, I would say, maybe mid-February. Is that
14    doable?
15             THE COURT: Sure. I will give you until February 19th
16    to file any defense motions; any opposition would be due by
17    March 4th; any reply by March 11th. Then, I will have you back
18    here on March 17th -- we can celebrate Saint Patrick's Day
19    together -- at 3:30 in the afternoon. If there are motions
20    filed, you should be prepared to address them at that time. If
21    they're of the nature that I can deal with them during the
22    conference, I may well do so. So you should be prepared for
23    that. If there is a motion that would seem to require a
24    hearing, we will schedule the hearing at that conference if not
25    before.

1          Again, just to reiterate, I will be setting a trial
2     date at that conference.  In case you're not aware, when I set
3     a trial date, I consider it to be a firm date, which is to say
4     it is not likely to change.  You should confer with one another
5     with respect to how long a trial in this matter would likely be
6     and when you would want a trial to be scheduled, and I will do
7     my best to accommodate your interests, but with the
8     understanding that when I sat the date, it will be a firm date.
9          Ms. Griswold, is there any application with respect to
10    the speedy trial clock?
11         MS. GRISWOLD:  Your Honor, both Ms. Magdo and I are
12    actually scheduled to be out of the office the week of
13    March 17th.  If we can ask possibly for an appearance a week
14    before or a week after.  We can have coverage, of course, if
15    necessary, but it would be our preference to have one of us be
16    here.
17         THE COURT:  I think it would probably make sense, in
18    the event that there are motions, to have you be present.  In
19    light of that, we will not celebrate Saint Patrick's Day
20    together, and I will schedule it for Tuesday, March 22nd, at
21    the same time, that is, 3:30 in the afternoon.
22         Is there any application under the Speedy Trial Act?
23         MS. GRISWOLD:  Yes, your Honor.  The government would
24    request that time be excluded from the speedy trial clock until
25    Tuesday, March 22nd, in order to allow the defendant to review

the discovery that has already been produced, as well as the discovery that will be forthcoming, and for the defendant to contemplate and file any motions.

THE COURT: Any objection, Mr. Wenner?

MR. WENNER: No, your Honor.

THE COURT: I will exclude time under the speedy trial clock between today and March 22nd, 2016. I find that the ends of justice served by excluding that time outweigh the interests of the defendant and the public in a speedy trial, to permit the government to complete its discovery obligations, and, more importantly, to allow counsel and the defendant to review discovery, to consider any motions that they would like to file, and to prepare those motions.

All right. Ms. Griswold, anything else?

MS. GRISWOLD: No, your Honor. Thank you.

THE COURT: Mr. Wenner.

MR. WENNER: Just one thing, your Honor. Mr. Olins is currently on pretrial release, and his travel is restricted to I believe New York, New Jersey, and Connecticut. There is a proceeding in the Northern District of California with the SEC and he has attorneys out there he is working with, and so we would ask the Court if his conditions can be modified so that he can travel to the Northern District of California with prior notification to the pretrial service officer. I have consulted with the government, and they said they do not object to this

1  request.

2  THE COURT: How often would you anticipate that trial
3  would be necessary?

4  MR. WENNER: I would say not too frequently but
5  frequently enough that it might be in everybody's interests not
6  to have to make an application each time.

7  THE COURT: I will grant the application, but it is
8  only on notice to both the government and pretrial services,
9  and in the event that there is any issue, it can be brought to
10  my attention, but subject to notification to both of them, the
11  application is granted.

12  MR. WENNER: Thank you, your Honor.

13  MS. GRISWOLD: Just for clarity of the record, I think
14  the travel restrictions right now are Southern and Eastern
15  District of New York and the District of Connecticut. I don't
16  think New Jersey is currently a condition, and I don't think
17  there is a request.

18  MR. WENNER: I'm sorry, your Honor. I misspoke.

19  THE COURT: Yes, you're correct, at least according to
20  the docket. To be clear, the application, as I understand it,
21  is to expand that to the Northern District of California and to
22  presumably travel to there, but solely for purposes of relating
23  to the SEC proceedings and on notice to pretrial services and
24  the government.

25  MR. WENNER: That is correct, your Honor.

1      THE COURT:  That is granted.
2      Anything other than that?
3      MR. WENNER:  No, your Honor.
4      THE COURT:  In that case, we are adjourned.
5      I wish everybody happy holidays.
6      (Adjourned)