G3MSOLIC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

      v.                         15 CR 861 (JMF)

ROBERT OLINS,

          Defendant.

------------------------------x

                           New York, N.Y.
                           March 22, 2016
                           3:30 p.m.

Before:

              HON. JESSE M. FURMAN,

                       District Judge

                 APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
CHRISTINE MAGDO
    Assistant United States Attorney

DAY BERRY & HOWARD, LLP
    Attorneys for Defendant
BY:  STANLEY A. TWARDY
    DANIEL E. WENNER

2
G3MSOLIC

(Case called)

MS. MAGDO: Good afternoon, your Honor. Assistant United State's Attorney Christine Magdo on behalf of the government. With me at counsel table is paralegal specialist Holly Meister.

THE COURT: Good afternoon.

MR. TWARDY: Good afternoon. Stanley Twardy, Day Berry, for Robert Olins. With me is my partner, Daniel Wenner from Day Berry.

THE COURT: Good afternoon to you.

I can't help but noticing that the person who is not with you is the defendant.

MR. TWARDY: Yes, your Honor. It is our understanding that this was a status conference. Mr. Olins was in a minor accident and asked whether or not he would need to be here. We looked at Federal Rule of Criminal Procedure 43(b)(3), which indicates that the defendant need not be present at a preliminary -- excuse me -- if the proceeding involves only a conference or a hearing on a question of law.

Today your Honor was to set a trial date and to argue on a pending motion. We did not see it in your Honor's rules that required the presence of the defendant for a proceeding like this.

THE COURT: Well, I have to say that's only because it has never come up that somebody even thought that the defendant

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  could not appear at a conference in connection with his case,
2  and especially where there is a motion pending and a trial date
3  is going to be set, which is to say that this is, in my now
4  13 years of experience as a prosecutor and judge, the first
5  time I have encountered a situation where the defendant has not
6  appeared without a lawyer seeking leave for that in advance of
7  the conference.
8  　　　　　I will tell you, if you had a good reason, I probably
9  would have granted you leave, assuming that you would waive his
10  presence, but I am not happy about it.  Let's put it that way.
11  　　　　　MR. TWARDY:  Your Honor, we understand.  And for that,
12  we apologize.  As I say, though, we looked at the rules, as I
13  said, 43(b)(3) and --
14  　　　　　THE COURT:  Well, the rule says that a defendant need
15  not be present, it doesn't say that a defendant can elect not
16  to be present.
17  　　　　　In my experience -- and this is one of those things I
18  think it is just so obvious that no one has ever asked -- a
19  defendant is required to appear at all court appearances unless
20  given leave not to appear.  This rule allows me to proceed
21  where the defendant does not appear, if there is circumstances
22  that might justify it and his presence is waived.
23  　　　　　Be that as it may, we are where we are.  He is not
24  here.  My intention is, assuming you would waive his presence,
25  to proceed, but it is not going to happen again.

MR. TWARDY: Your Honor, we apologize. It will not happen again. We will waive it.

We spoke to Mr. Olins about the trial dates. He understands what is going forward today, and it was his request not to do so. We will ask for the waiver.

THE COURT: One of the reasons that I do want the defendant here for setting of a trial date is that I make a practice of underscoring that, when I set a trial date, it is a firm date, and that everybody in the room understands that, including and especially the defendant, so that if there are any issues that might affect that, including issues with counsel, for example, that the defendant understands those need to be raised sooner rather than later.

I think what I will do, I will give my normal spiel and require you to order the transcript and provide it to the defendant, and then to file a letter affirming that the defendant has read it and understands and that there are no issues.

MR. TWARDY: We will do so, your Honor.

THE COURT: I will waive the defendant's presence.

I am prepared to rule on the motion.

This is a motion to strike surplusage from the indictment. I want to give you my ruling on that and then we can proceed.

The defendant moves, pursuant to Rule 7(d) of the

Federal Rules of Criminal Procedure, to strike as surplusage various paragraphs from the indictment. The standard is well established, namely that, "motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory or prejudicial." That is from <u>United States v. Mulder</u>, 273 F.3d 91, 99 (2d Cir. 2001).

Measured against that standard, I am inclined to believe that -- I want to stress those words -- that most of the defendant's arguments are without merit. First, on the whole, I want to stress those words as well, the allegations concerning the disgorgement action appear to be relevant as background and/or as inextricably intertwined with the offenses charged. See <u>Mulder</u> at pages 99 to 100 (holding that statements providing background are relevant and need not be struck as surplusage). Second, defendant's arguments concerning his alleged false statements to the California court and the Dragon Candelabra allegations seem to me to depend on a mischaracterization and/or myopic view of the charges in the indictment, substantially for the reasons stated by the government in its memorandum of law.

The arguments with respect to the Dragon Candelabra in particular strike me as arguments that Mr. Olins may well want to make at trial with respect to his guilt or innocence, but I don't think that they are arguments about surplusage.

            Having said all of that, following what is common practice in this district, see, for example, <u>United States v. Ulbricht</u>, 2014 WL 5090039, at page 17 (S.D.N.Y. October 10, 2014)(citing cases), I am not going to rule on the defendant's motion at this time.  Instead, I deny the motion without prejudice to renewal at the conclusion of trial, when the government's evidence and theories will be unambiguous and spelled out.

            The denial is also without prejudice to renewal of the arguments that defendant makes in the form of a motion in limine seeking to limit or exclude some evidence on Rule 401 or 403 grounds or for that matter any other valid grounds for limiting or excluding evidence.  In that regard, I should note that, in saying that the -- this is where my emphasis earlier comes in -- in saying that allegations concerning the disgorgement action appear to be relevant to me, I do not mean to suggest that, if I ultimately ruled to that effect, that the government would have carte blanche at trial to introduce any and all evidence concerning the disgorgement action and its origins.  That is to say, I couldn't imagine limiting the evidence that the government could admit on that, so as to provide background, but without introducing evidence that would be unfairly prejudicial to the defendant.  That is another way of saying that, even if evidence of the disgorgement action is generally admissible as background, and for that reason the

1  allegations in the complaint are generally proper and not
2  surplusage, Rule 403 may call for limiting the nature of that
3  evidence and ultimately for striking some portions of the
4  indictment, if I even submit it to the jury.
5       Deferring consideration of these issues strikes me as
6  far preferable to ruling on them now in the context of this
7  motion.  For one thing, the issue may well become moot --
8  because of a pretrial disposition and agreement between the
9  parties or a decision by me not to provide a copy of the
10 indictment to the jury.  And if it doesn't become moot, I will
11 have a much better and more developed record upon which to rule
12 after or closer to trial than I do now.
13      So, for those reasons, the motion is denied, but
14 without prejudice to renewal and in the manner that I have
15 described.
16      I think, having resolved that, the main order of
17 business is to set a trial date.  Is there anything else to
18 discuss before we do that?
19      MS. MAGDO:  Not from the government, your Honor.
20 Thank you.
21      MR. TWARDY:  Not from the defense, your Honor.
22      THE COURT:  Have you discussed a trial date?
23      Let me ask you, Ms. Magdo, how long would a trial in
24 this matter take if it were to go to trial?
25      MS. MAGDO:  Your Honor, the government's best estimate

1   is that it would last somewhere between one and two weeks.

2   THE COURT: Is that estimate of the government's case
3   in chief or --

4   MS. MAGDO: Of both sides.

5   We attempted to confer. We decided calling it one
6   week might be cutting it a bit short. We would prefer to
7   overestimate a little bit and to say one to two weeks.

8   THE COURT: Mr. Twardy.

9   MR. TWARDY: Yes, your Honor. We did talk with the
10  government, and I think it is our understanding, my
11  understanding, your Honor, that for trials, that you hold
12  trials and cease in the afternoon. That is what had us to the
13  point that if this were a nine-to-five trial, that it might be
14  five or six days, but given your Honor, as I know, has a very
15  tight schedule but does have the afternoons off, we are
16  concerned about a little bit of leakage.

17  THE COURT: That's fine.

18  In my experience, I end up getting almost as much
19  trial time in in a week as a judge sitting the more
20  conventional schedule, in part because most of those judges
21  don't sit five days a week. I do sit five days a week,
22  typically the 9:00 to 2:30 schedule with one half-hour break.

23  When were you thinking of having trial, to the extent
24  that I can accommodate?

25  MS. MAGDO: After conferring, we found that the

1  parties were all available the week of May 23 and into the

2  following week, if necessary.

3     THE COURT:  I am not available May 23.  I think we are

4  going to find it is hard to find any judge who is available

5  that week.  I am on part one the following two weeks.

6     MS. MAGDO:  From the government's perspective, we

7  could do anytime in May and June.  In July our agents are on

8  other trials, but we could, if necessary, work around that.

9     THE COURT:  Mr. Twardy.

10    MR. TWARDY:  Yes, your Honor.

11    The only problem that the defendant has -- it is not

12  the defendant, it is myself -- I have a longstanding trip to

13  England.  I leave on Friday, the 10th, and return on Monday

14  afternoon, the 20th of June.  If I had a little bit of time to

15  get reacclimated hour wise, anytime after that we could go.

16    If I might suggest starting the week of June 27?

17    THE COURT:  Ms. Magdo, you indicated the agents had

18  some issues come July?

19    MS. MAGDO:  Yes.  I think that would work.  The only

20  question is whether there is any issue with it being over the

21  long weekend, the 4th of July weekend.  We will just include

22  that in our questions to the jurors.

23    THE COURT:  Obviously, we couldn't sit on July 4, it

24  being a court holiday.

25    I think I will set it down for trial on June 27.  This

1  is where my warning comes in.  Everyone should understand that
2  that is a firm date.  Barring something pretty extraordinary,
3  assuming that the case is not otherwise disposed of, we will
4  begin trial on June 27.
5         What that means, as I more or less already indicated,
6  is that if there is anything that could affect that trial date,
7  whether it be an issue related to discovery, whether it be some
8  sort of motion, whether it be an issue, as I said, between the
9  defendant and counsel, it is incumbent upon you to raise it
10 sooner rather than later.  The closer we get to the trial date,
11 the more likely it is we deny the application that could have
12 an effect on the beginning of trial.
13        Do you understand that, Ms. Magdo?
14        MS. MAGDO:  Yes.  Thank you, your Honor.
15        THE COURT:  Mr. Twardy.
16        MR. TWARDY:  Yes.
17        THE COURT:  You'll order the transcript and file a
18 letter indicating the defendant has read it and understands as
19 well?
20        MR. TWARDY:  Yes, your Honor.
21        THE COURT:  My normal practice is about two months
22 prior to trial, so that would be the end of April, I'll issue a
23 scheduling order that sets a deadline for the following of a
24 final pretrial conference and any motions in limine, request to
25 charge, and the like.

1              Mr. Twardy, let mind me, for purposes of that order,
2    you're back on the 20th of June?
3              MR. TWARDY:  I'll be back on the 20th, yes, your
4    Honor, of June.
5              THE COURT:  The final pretrial conference is likely to
6    be sometime during that week closer to the end of that week.
7              MR. TWARDY:  That's fine.
8              THE COURT:  I will do that.
9              Ms. Magdo, is there an application with respect to the
10   speedy trial clock?
11             MS. MAGDO:  Yes, your Honor.
12             The government moves to exclude time pursuant to
13   3161(h) in the interest of justice.  I may be getting the
14   section wrong.  We move to exclude time.
15             THE COURT:  It used to be (h).  I think it still is
16   (h).
17             Any objection?
18             MR. TWARDY:  No, your Honor.
19             THE COURT:  I will exclude time between today and
20   June 27, 2016.  I find that ends of justice served by excluding
21   that time outweigh the interest of the public and the defendant
22   in a speedy trial, to allow the parties to prepare for trial,
23   but more importantly, in light of defense counsel's scheduling
24   issues, to allow for the continuity of counsel.
25             Is there anything else we should discuss?

G3MSOLIC

1   MS. MAGDO:  Not from the government.  Thank you.
2   THE COURT:  Mr. Twardy.
3   MR. TWARDY:  Not from the defense, your Honor.  And I
4   apologize.
5   THE COURT:  Well, I appreciate that.  Apology
6   accepted.
7   Thank you very much.  Have a good day.
8   (Adjourned)