G6AVOLIP

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                        15 CR 861 (JMF)

5    ROBERT OLINS,

6              Defendant.                PLEA

7    ------------------------------x

8                                        New York, N.Y.
                                         June 10, 2016
9                                        2:15 p.m.

10

     Before:
11
                         HON. JESSE M. FURMAN,
12
                                         District Judge
13

14                         APPEARANCES

15

     PREET BHARARA,
16        United States Attorney for the
          Southern District of New York
17   CHRISTINE I. MAGDO
          Assistant United States Attorney
18
     JAMES R. DeVITA
19   ANTHONY CECUTTI
          Attorneys for Defendant
20

21
     ALSO PRESENT:  HOLLY MEISTER, Paralegal Specialist, USAO
22

23

24

25

2

G6AVOLIP

```
 1            (Case called)
 2            THE COURT:  My apologize for keeping you waiting.
 3    There was a little bit of a miscommunication on my end.  I
 4    think my deputy thought -- because I told her that I was coming
 5    straight here, I was sitting upstairs waiting thinking that you
 6    guys weren't ready.  So I apologize to you and to her.
 7            All right.  My understanding is that, Mr. Olins, you
 8    wish to change your plea and enter a guilty plea to Counts One
 9    and Five of the indictment S1 15 CR 861; is that correct?
10            THE DEFENDANT:  Yes, your Honor.
11            THE COURT:  All right.
12            Before I accept your guilty plea, I need to ask you
13    certain questions to ensure that you are pleading guilty
14    because you are, in fact, guilty and not for some other reason,
15    to ensure that you understand the rights that you would be
16    giving up by pleading guilty, and that you understand the
17    potential consequences of a guilty plea.
18            It is essential that you understand each of my
19    questions before you answer them; so if you do not understand
20    any question, I want you to let me know so that Mr. DeVita or
21    Mr. Cecutti can explain it to you more fully or I can explain
22    it to you more fully.  If at any point you'd like to consult
23    with your lawyers for any reason, just let me know and I'm
24    happy to give you however much time you would like to speak
25    with them.
```

G6AVOLIP

1          Do you understand all that?

2          THE DEFENDANT:  Yes, I do, your Honor.

3          THE COURT:  I'll ask my deputy, Ms. Smallman, to

4     administer the oath to Mr. Olins.

5          (Defendant sworn)

6          MR. DeVITA:  Do you want us to remain standing, your

7     Honor?

8          THE COURT:  You may be seated.  Thank you.  Just make

9     sure each of you has a microphone within reach.

10          Mr. Olins, you are now under oath, which means if you

11     answer any of my questions falsely, you may be subject to

12     prosecution for the separate crime of perjury.

13          Do you understand that?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  What is your full name?

16          THE DEFENDANT:  Robert Alan Olins.

17          THE COURT:  How old are you?

18          THE DEFENDANT:  59.

19          THE COURT:  How far did you go in school?

20          THE DEFENDANT:  Bachelor of science and finance

21     undergraduate.

22          THE COURT:  Have you ever been treated or hospitalized

23     for any type of mental illness?

24          THE DEFENDANT:  No.

25          THE COURT:  Are you now or have you recently been

G6AVOLIP

1      under the care of a doctor or a psychiatrist?

2              THE DEFENDANT:  Doctors, yes.

3              THE COURT:  Can you just tell me generally what sorts

4      of things you're being treated for.

5              THE DEFENDANT:  Rheumatoid arthritis, stenosis in the

6      cervical vertebrae, and just general -- and I have severe

7      claustrophobia.

8              THE COURT:  Are you receiving any medications for any

9      of that?

10             THE DEFENDANT:  Yes, I do.

11             THE COURT:  Are you on any medications right now?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Is there anything about the conditions or

14     the treatment, including the medications, that would affect

15     your ability to understand what's happening here today?

16             THE DEFENDANT:  No, your Honor.

17             THE COURT:  All right.

18             Have you ever been treated or hospitalized for any

19     type of addiction, including drug or alcohol addition?

20             THE DEFENDANT:  No, your Honor.

21             THE COURT:  In the last 48 hours, have you taken any

22     drugs, medicine or pills, including the medication that you

23     just alluded to, or had any alcohol in the last 48 hours?

24             THE DEFENDANT:  I've had the pills.

25             THE COURT:  All right.

G6AVOLIP

1                 Can you just tell me briefly what those are.

2                 THE DEFENDANT:  I take Percocet for the pain for the

3     rheumatoid arthritis, and I take Valium for the claustrophobia,

4     and I take telmisartan for high blood pressure.

5                 THE COURT:  All right.

6                 Have you taken any of those today or --

7                 THE DEFENDANT:  Yes, I have.

8                 THE COURT:  Are they affecting your ability to

9     understand what's happening here today?

10                THE DEFENDANT:  No, your Honor.

11                THE COURT:  Is your mind clear today?

12                THE DEFENDANT:  Yes, your Honor.

13                THE COURT:  Do you understand what's happening here

14    today?

15                THE DEFENDANT:  Yes.

16                THE COURT:  Mr. DeVita, have you discussed this matter

17    with Mr. Olins, I assume?

18                MR. DeVITA:  Yes, I have, your Honor.

19                THE COURT:  Does he understand the rights he would be

20    giving up by pleading guilty?

21                MR. DeVITA:  He does.

22                THE COURT:  Is he capable of understanding the nature

23    of these proceedings, in your judgment?

24                MR. DeVITA:  Absolutely.

25                THE COURT:  Does either counsel have any doubt as to

G6AVOLIP

1    the defendant's competence to plead guilty at this time?

2              MS. MAGDO:  No, your Honor.

3              MR. DeVITA:  No, your Honor.

4              THE COURT:  On the basis of Mr. Olins' responses to my

5    questions, my observations of his demeanor here in court, and

6    the representations of counsel, I find that he is fully

7    competent to enter an informed plea of guilty at this time.

8              Mr. Olins, have you received a copy of the indictment

9    S1 15 CR 861 containing the charges to which you intend to

10   plead guilty?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Have you read it?

13             THE DEFENDANT:  Yes, I have.

14             THE COURT:  Have you had enough time to discuss with

15   Mr. DeVITA the charges to which you intend to plead guilty and

16   any possible defenses to those charges?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Has he explained to you the consequences

19   of entering a guilty plea?

20             THE DEFENDANT:  He has.

21             THE COURT:  Are you satisfied with your lawyers'

22   representation of you?

23             THE DEFENDANT:  Yes, I am.

24             THE COURT:  All right.

25             Now, I have here a written advice of rights form which

G6AVOLIP

1   I will mark as Court Exhibit 1 and provide to the government to

2   keep in its possession after this proceeding.

3           Turning to page 2 of the form, it appears that you

4   have signed it dated today, June 10th.  Is that your signature

5   there on page 2 of the form or would you like --

6           THE DEFENDANT:  I believe it is, yes.

7           THE COURT:  Let me have my deputy just show it to you

8   just so there's no ambiguity.

9           MR. DeVITA:  Your Honor, I handed it to your deputy as

10  your Honor was coming, so I think we're satisfied it's the same

11  one we just signed.

12          THE COURT:  Very good.

13          Before you signed that form, Mr. Olins, did you read

14  it?

15          THE DEFENDANT:  Yes, I did.

16          THE COURT:  Before you signed it, did you discuss it

17  with Mr. DeVita?

18          THE DEFENDANT:  Yes, I did.

19          THE COURT:  Or Mr. Cecutti?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Did they explain it to you and answer any

22  questions you may have had about the form?

23          THE DEFENDANT:  They did, your Honor.

24          THE COURT:  Now, I'm going to go over many of the same

25  things with you orally just to ensure that you understand what

G6AVOLIP

1   you're doing and the consequences of what you are doing.

2           Under the Constitution and laws of the United States,

3   you have the right to plead not guilty to the charges in the

4   indictment.

5           Do you understand that?

6           THE DEFENDANT:  I do.

7           THE COURT:  If you did plead not guilty, you would be

8   entitled to a speedy and public trial by a jury on those

9   charges.

10          Do you understand that?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  At that trial, you would be presumed to be

13  innocent and you would not have to prove that you were

14  innocent; instead, the government would be required to prove

15  your guilt by competent evidence beyond a reasonable doubt

16  before the jury could find you guilty.

17          Do you understand that?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  In order to find you guilty, a jury of 12

20  people would have to agree unanimously that you were guilty.

21          Do you understand that?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  At that trial and at every stage of your

24  case, you would be entitled to the assistance of a lawyer.  If

25  you could not afford a lawyer, one would be appointed at public

G6AVOLIP

1    expense free of cost to represent you.

2                  Do you understand that?

3                  THE DEFENDANT:  Yes, I do.

4                  THE COURT:  During a trial, the witnesses for the

5    government would have to come to court and testify in your

6    presence.  Your lawyer would have an opportunity to

7    cross-examine those witnesses and object to any evidence

8    offered against you by the government.  You would also have an

9    opportunity to introduce evidence on your own behalf and have

10   subpoenas issued or other process used to compel witnesses to

11   come to court and testify in your presence.

12                  Do you understand all that?

13                  THE DEFENDANT:  Yes, I do.

14                  THE COURT:  At a trial, you would have the right to

15   testify if you chose to do so, but you would also have the

16   right not to testify.  If you chose not to testify, then no

17   one, including the jury, could draw any inference or suggestion

18   of guilt from the fact that you did not testify.

19                  Do you understand that?

20                  THE DEFENDANT:  I understand that.

21                  THE COURT:  Before trial, you would have an

22   opportunity to seek suppression or exclusion of evidence that

23   the government would use against you at trial unless you have

24   waived your opportunity to do so.

25                  Do you understand that?

G6AVOLIP

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  If you were convicted at trial, you would

3   have the right to appeal that verdict and a right to appeal any

4   pretrial rulings I made, including the ruling I made in

5   connection with the motion that you filed earlier in this

6   litigation.

7          Do you understand that?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  If you plead guilty, you will also have to

10  give up your right not to incriminate yourself because I may

11  ask you questions about what you did in order to satisfy myself

12  that you are guilty as charged and you will have to admit and

13  acknowledge your guilt.

14         Do you understand that?

15         THE DEFENDANT:  I understand that.

16         THE COURT:  If you plead guilty and if I accept your

17  guilty plea, you will give up your right to a trial and the

18  other rights that we have just discussed, other than your right

19  to a lawyer, which you keep whether or not you plead guilty.

20  But there will be no trial and I will enter a judgment of

21  guilty and sentence you on the basis of your plea after I have

22  received and considered a presentence report prepared by the

23  United States Probation Department and any submissions that I

24  get from the lawyers.  There will be no appeal with respect to

25  whether you did or did not commit the offenses to which you are

G6AVOLIP

| | |
|---|---|
| 1 | pleading guilty with respect to my pretrial rulings or with |
| 2 | respect to whether the government could use the evidence that |
| 3 | it has against you. |
| 4 | Do you understand all of that? |
| 5 | THE DEFENDANT:  I do. |
| 6 | THE COURT:  Even now as you are entering this plea, |
| 7 | you have the right to change your mind, to plead not guilty, |
| 8 | and to go to trial on the charges in the indictment. |
| 9 | Do you understand that? |
| 10 | THE DEFENDANT:  Yes, your Honor. |
| 11 | THE COURT:  Do you understand each and every one of |
| 12 | the rights that we have just discussed? |
| 13 | THE DEFENDANT:  I do. |
| 14 | THE COURT:  Are you willing to give up your right to a |
| 15 | trial and the other rights that we have discussed? |
| 16 | THE DEFENDANT:  Yes, your Honor. |
| 17 | THE COURT:  Do you understand that you are charged in |
| 18 | Count One with conspiring to obstruct justice, in violation of |
| 19 | Title 18, United States Code, Section 371, and that you are |
| 20 | charged in Count Five with money laundering, international |
| 21 | money laundering in particular, in violation of Title 18, |
| 22 | United States Code, Section 1956(a)(2)? |
| 23 | Do you understand that those are the charges in those |
| 24 | counts? |
| 25 | THE DEFENDANT:  Yes, your Honor. |

G6AVOLIP

1          THE COURT:  Ms. Magdo, would you please state the

2     elements of those offenses.

3          MS. MAGDO:  Certainly.

4          The elements of a conspiracy under Count One are:

5          There existed an agreement between two or more people

6     to violate a law of the United States, in this case, to violate

7     Title 18, U.S.C., Section 1503; second, the defendant knowingly

8     and willfully became a member of the conspiracy; and third, at

9     any time during the existence of the conspiracy, any one of the

10    conspirators committed an overt act in furtherance of that

11    agreement.

12         The elements of the underlying offense, obstruction of

13    justice, are, one, that there was a pending judicial proceeding

14    constituting the administration of justice; two, the defendant

15    knew or had notice of the proceeding; and three, the defendant

16    acted with the wrongful intent or improper purpose to influence

17    the judicial or grand jury proceeding, whether or not the

18    defendant was successful in doing so.

19         For Count Five, international money laundering, there

20    are two elements:

21         One, the defendant transported, transmitted or

22    transferred, or attempted to transport, transmit or transfer a

23    monetary instrument or funds from a place in the United States

24    to or through a place outside the United States, or to a place

25    in the United States from or through a place outside the United

G6AVOLIP

1    States.

2          Two, the defendant did so with the intent to promote a

3    specified unlawful activity, in this case, the offense charged

4    in Count One of the indictment, which qualifies as a specific

5    unlawful activity under the money laundering statutes.

6          THE COURT:  All right.  Thank you very much.

7          Mr. Olins, do you understand that if you were going to

8    trial, the government would have to prove each of those

9    elements beyond a reasonable doubt before the jury could find

10   you guilty?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Let me tell you now about the maximum

13   possible punishments that apply to these crimes.  By "maximum"

14   I mean the most that could possibly be imposed upon you; it

15   doesn't necessarily mean that that is the sentence you will

16   receive, but you have to understand that by pleading guilty,

17   you are exposing yourself to punishments up to the statutory

18   maximum.

19         Do you understand that?

20         THE DEFENDANT:  Yes.

21         THE COURT:  First let me tell you about the possible

22   restrictions on your liberty.

23         The maximum term of imprisonment for Count One is five

24   years and the maximum term of imprisonment for Count Five is 20

25   years.  Those could be followed by supervised release terms up

G6AVOLIP

to three years in each case.  "Supervised release" means that
you would be subject to supervision by the probation
department.  There would be rules that you would have to
follow.  If you violated those rules, you could be returned to
prison to serve additional time without a jury trial and
without credit for the time spent on your underlying sentence
or credit for time spent on post-release supervision.

Do you understand all that?

THE DEFENDANT:  I do.

THE COURT:  You should understand that there is no
such thing as parole in the federal system in this country,
which means that if you are sentenced to prison you would not
be released early on parole.  There is a limited opportunity to
earn credit for good behavior, but if you were sentenced to
prison, you would have to serve at least 85 percent of the time
to which you were sentenced.

Do you understand that?

THE DEFENDANT:  I do, your Honor.

THE COURT:  In addition to those potential
restrictions on your liberty, the maximum punishment also
includes certain financial penalties:

First, the maximum allowable fine for Count One is the
greatest of $250,000, twice the gross pecuniary or financial
gain derived from the offense or twice the gross pecuniary loss
to someone other than you as a result of the offense.

G6AVOLIP

1          The maximum allowable fine for Count Five is the

2     greater of $500,000 or twice the value of the funds involved in

3     the illegal transfer.  In addition, I can order restitution to

4     any person or entity injured as a result of your criminal

5     conduct.  And here in the plea agreement that we will talk

6     about shortly, I understand that you agree to make restitution

7     in an amount ordered by me, the total of which shall not be

8     less than $657,000, to American Bank and Trust Company and the

9     Securities and Exchange Commission.

10          Third, I can order you to forfeit all property derived

11     from the offense or used to facilitate the offense.  Again, I

12     note that in the plea agreement that we will discuss you admit

13     to the forfeiture allegations with respect to Counts One and

14     Five and agree to forfeit to the United States certain property

15     set forth in the agreement.

16          Finally, I must order a mandatory special assessment

17     of $100 per count.

18          Do you understand that those are the maximum possible

19     penalties?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Do you understand that it is possible,

22     taking the two counts together, that you could receive a

23     sentence of imprisonment up to 25 years?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  All right.

G6AVOLIP

1        Now, are you a citizen of the United States,

2   Mr. Olins?

3        THE DEFENDANT:  I am.

4        THE COURT:  You should understand that as a result of

5   your guilty plea, you may lose certain valuable civil rights,

6   to the extent that you have them or could otherwise obtain them

7   now, such as the right to vote, the right to hold public

8   office, the right to serve on a jury, and the right to possess

9   any kind of firearm.

10       Do you understand that?

11       THE DEFENDANT:  Yes.

12       THE COURT:  Are you serving any other sentence, either

13   state or federal, or being prosecuted in any other court at

14   this time?

15       THE DEFENDANT:  No.

16       THE COURT:  Do you understand that if your lawyer or

17   anyone else has attempted to predict what your sentence will

18   be, that their predictions could be wrong?

19       THE DEFENDANT:  I do.

20       THE COURT:  It is important for you to understand that

21   no one, not your lawyer, not the lawyers for the government, no

22   one can give you any assurance or promise as to what your

23   sentence in this case will be, and that is because your

24   sentence will be determined by me and by me alone.

25       I'm not going to do that today.  Instead, I will wait

G6AVOLIP

1  until I get the presentence report that I mentioned earlier.  I

2  will do my own independent calculation of how the United States

3  Sentencing Guidelines apply to your case and consider any

4  departures from the guidelines range.  I will consider any

5  submissions that I get from the lawyers and the factors set

6  forth in a statute that governs sentencing:  Title 18, United

7  States Code, Section 3553(a).  I will do all of that before

8  determining and imposing an appropriate sentence on you.

9              Do you understand all that?

10             THE DEFENDANT:  I do, your Honor.

11             THE COURT:  Have you discussed that process with your

12  lawyers?

13             THE DEFENDANT:  Yes, I have.

14             THE COURT:  Even if your sentence is different from

15  what your lawyer or anyone else has told you that it might be,

16  even if it is different from what you expect or hope it to be,

17  and even if it is different from what may be in the plea

18  agreement that we will talk about in a moment, you will still

19  be bound by your guilty plea and you will not be allowed to

20  withdraw your plea.

21             Do you understand that?

22             THE DEFENDANT:  I do.

23             THE COURT:  I understand that there is a written plea

24  agreement that you and your lawyers have entered into with the

25  lawyers for the government; is that correct?

G6AVOLIP

1        THE DEFENDANT:  That's correct.

2        THE COURT:  I have the original letter plea agreement

3   here dated June 9th, 2016 from Assistant United States

4   Attorneys Christine Magdo and Andrea Griswold addressed to your

5   lawyer Mr. DeVita.  I will mark this as Court Exhibit 2 and

6   provide it to the government to retain in its possession after

7   this proceeding.

8        Turning to the last page of the agreement, it appears

9   to have been signed by you dated today.  Again, I'm going to

10  show it to you, and hopefully you can identify it from there,

11  but is that your signature?

12        THE DEFENDANT:  Yes, your Honor.

13        THE COURT:  Before you signed the plea agreement, did

14  you read it?

15        THE DEFENDANT:  I did.

16        THE COURT:  Before you signed it, did you discuss it

17  with Mr. DeVita?

18        THE DEFENDANT:  I did.

19        THE COURT:  Before you signed it, did he explain it to

20  you and answer any questions that you may have had about the

21  plea agreement?

22        THE DEFENDANT:  He did.

23        THE COURT:  Before you signed the plea agreement, did

24  you fully understand it?

25        THE DEFENDANT:  Yes, I did.

G6AVOLIP

1          THE COURT:  Now, one of the features of your agreement

2     is that you and the government have agreed on how the United

3     States Sentencing Guidelines apply to your case; is that

4     correct?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  You should understand that that agreement

7     is binding on you and it's binding on the government, but it is

8     not binding on me, which is to say that I have my own

9     independent obligation to determine the correct guidelines

10    range.  I'm not suggesting to you that I will come up with a

11    different calculation than the one set forth here or let alone

12    that it would be a higher calculation, but that's always a

13    possibility.  If I did come up with a different or higher

14    calculation, you would still be bound by your guilty plea and

15    you would not be allowed to withdraw your plea.

16          Do you understand that?

17          THE DEFENDANT:  I do.

18          THE COURT:  Now, another feature of your agreement is

19    that you have agreed not to appeal or otherwise challenge any

20    sentence that is within or below the stipulated sentencing

21    guidelines range of 33 to 41 months in prison, which means that

22    if I sentence you to 41 months in prison or anything less than

23    41 months in prison, you would not be allowed to appeal or

24    otherwise challenge that sentence.

25          Do you understand that?

G6AVOLIP

1              THE DEFENDANT:  I do.

2              THE COURT:  Does this written agreement constitute

3    your complete and total understanding of the entire agreement

4    between you and the government?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Has anything been left out of the written

7    plea agreement?

8              THE DEFENDANT:  Not that I know of.

9              THE COURT:  All right.

10             Mr. DeVita, anything --

11             MR. DeVITA:  No, your Honor.  It's the complete

12   agreement.

13             THE COURT:  All right.

14             Other than what is written in the agreement,

15   Mr. Olins, has anyone made any promise to you or offered you

16   any inducement either to plead guilty or to sign the plea

17   agreement?

18             THE DEFENDANT:  No, your Honor.

19             THE COURT:  Has anyone forced you or threatened you to

20   sign the plea agreement.

21             THE DEFENDANT:  No, your Honor.

22             THE COURT:  Has anyone made a promise to you as to

23   what your sentence will be?

24             THE DEFENDANT:  No, your Honor.

25             THE COURT:  Okay.

G6AVOLIP

1          Mr. Olins, I'd like you now to tell me in your own

2     words what you did that makes you believe that you are guilty

3     of the crimes charged in Counts One and Five of the

4     indictments.

5          MR. DeVITA:  Your Honor, Mr. Olins and I have

6     collaborated.  I've helped him prepare a written statement that

7     he would like to read.  It's a somewhat complicated set of

8     facts.  I think it would make the matter easier for him to read

9     it, if that's all right.

10          THE COURT:  As long as he's prepared to state it as --

11          MR. DeVITA:  Yes, your Honor, it's based on what he's

12     told me.

13          THE COURT:  Very good.  That's certainly not unusual.

14     You're welcome to proceed in that manner, as long as what you

15     say you are prepared to adopt and is, in fact, true.  So you

16     may proceed.

17          THE DEFENDANT:  Thank you.

18          In July of 2011, the SEC commenced an action here in

19     the U.S. District Court in Southern District to enforce a

20     disgorgement judgment it had obtained in another action against

21     me in the U.S. District Court in the Northern District of

22     California.

23          In about April of 2012, Judge Cote of this Court

24     granted the SEC's motion to appoint a receiver to liquidate a

25     collection of antiques that I owned.  The receiver appointed by

G6AVOLIP

1    the Court was American Bank and Trust Company, which had a

2    first lien on the antique collection from a prior loan to me.

3              An antique dealer called Mallett, with showrooms here

4    in New York and in London, had a number of the items from my

5    collection on consignment from a time predating the

6    disgorgement order and the receivership.  The items on

7    consignment to Mallett included a valuable set of three antique

8    vases.  Based on an offer from Mallett to purchase those vases,

9    which was on June 12th, 2012, the receiver applied for court

10   approval to sell the vases to Mallett.

11             Mallett represented to the receiver that it had a

12   buyer for the vases who would pay approximately $600,000 and

13   that Mallett would retain $60,000 as its profit or commission

14   on the sale, leaving a balance of $540,000 to be paid to the

15   receiver.  The Court granted the receiver's application on June

16   14th, 2012.

17             On June 19th, 2012, I met with Henry Neville, who was

18   the president of Mallett, here in New York at Mallett's shop or

19   showroom in New York.  And Mr. Neville told me for the first

20   time that Mallett had sold the vases for more than $600,000.

21   He told me the vases had been sold for a million dollars.

22             I understood at that point that Mallett and

23   Mr. Neville had obtained the vases and the excess funds from

24   the sale from the receiver, American Bank and Trust, on the

25   basis of false representations regarding how much Mallett would

G6AVOLIP

1    sell the vases for.  In that June 19th, 2012 meeting,

2    Mr. Neville informed me that Mallett was going to apply a

3    significant part of the excess proceeds for the sale of the

4    vases to reduce an outstanding debt for another antique item

5    Mallett was holding and that I had agreed to purchase in 2010

6    before the SEC's disgorgement order.

7           I asked Mr. Neville to provide me with some part of

8    the excess proceeds from the sale of the vases and he agreed.

9    At my request, Mr. Neville arranged for Mallett to wire

10   $160,000 to a bank account in the Isle of Man for the benefit

11   of a company affiliated with me.  A significant part of that

12   160,000 was ultimately disbursed for my benefit.  I did not

13   inform the receiver that Mallett had sold the vases for

14   significantly more than it had represented or that I had

15   received directly or indirectly part of the proceeds of the

16   sale.

17          When I arranged for Mallett to transfer the 160,000 to

18   the Isle of Man account, I did so, at least in part, in order

19   to prevent the SEC from seizing those funds or obtaining them

20   in satisfaction of the obligations covered by the judgment

21   enforcement action in the court.

22          THE COURT:  All right.

23          A couple of just follow-up questions for you.

24          First, you said you met with Mr. Neville here in New

25   York.

G6AVOLIP

1                    THE DEFENDANT:  Yes.

2                    THE COURT:  Can you be more precise.  Where in New

3      York?

4                    THE DEFENDANT:  73rd Street and Madison Avenue.

5                    THE COURT:  In Manhattan?

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  Okay.

8             When you transmitted these funds or directed that the

9      funds be transmitted, I take it you understood that those

10     funds -- at a minimum that the Court should have been advised

11     about those funds and perhaps that the funds should have been

12     provided to the Court or at least to the receiver, is that a

13     fair statement?

14                   THE DEFENDANT:  Yes, your Honor.

15                   THE COURT:  So was it your intent in transferring

16     those funds to essentially obstruct or interfere with the

17     proceedings by preventing that money from getting into the

18     hands of the receiver and/or the SEC?

19                   THE DEFENDANT:  Yes, your Honor.

20                   THE COURT:  When you did those things, did you

21     understand that what you were doing was wrong and was, in fact,

22     contrary to the orders entered by Judge Cote in the action

23     here?

24                   THE DEFENDANT:  I did know it was wrong.

25                   THE COURT:  Mr. DeVita, are you aware of any valid

G6AVOLIP

1    defense that would prevail at trial or do you know of any

2    reason why Mr. Olins should not be permitted to plead guilty to

3    these two counts?

4                MR. DeVITA:  No, your Honor, I don't know of any

5    reason why he should not be permitted to plead guilty.

6                THE COURT:  Very good.

7                Ms. Magdo, are there any additional questions that you

8    think I should ask Mr. Olins?

9                MS. MAGDO:  No, your Honor.  I think that satisfies

10   the elements.

11               THE COURT:  Could you please state briefly what the

12   government's evidence would be and what it would show if the

13   defendant were to go to trial.

14               MS. MAGDO:  Certainly.

15               The government's evidence at trial would consist

16   mainly of testimony from witnesses; it would consist of bank

17   records, including records from the Isle of Man account,

18   emails, and other documents from Mallett and from Mr. Olins'

19   other correspondence.  It would show that, in fact, there was a

20   judicial proceeding.  There was one here in New York with Judge

21   Cote, and then there was one in San Francisco also in federal

22   court.

23               Mr. Olins was aware of those proceedings.  He and

24   Mr. Neville entered into a conspiracy to obstruct justice by

25   preventing the courts, the SEC, and the receiver from learning

G6AVOLIP

1    about the additional funds that were retained by Mallett and

2    that were retained by Mr. Olins.

3         The evidence would also show that Mr. Olins directed

4    the transfer of $160,000 from an account in New York to an

5    account in the Isle of Man and then eventually back into the

6    United States; and that those funds were used for his benefit;

7    and that he engaged in that transfer of money internationally,

8    at least in part to promote the obstruction of justice that I

9    just described.

10        THE COURT:  All right.  Thank you.

11        Mr. DeVita, do you agree that Count One gives a

12   predicate, if you will, that is to say that the unlawful

13   activity specified in Count One qualifies as specified unlawful

14   activity for purposes of Count Five?

15        MR. DeVITA:  I believe that is correct, your Honor.

16   We've discussed that.  I also believe that Mr.  -- what

17   Mr. Olins has described would also qualify under the other

18   branch of the international money laundering, that it was for

19   the purpose of concealing the source of funds and the location

20   of funds.  So I think that clearly under either -- I accept

21   Ms. Magdo's representation that it is a specified unlawful

22   activity, but I also think that it satisfies the conduct

23   described, satisfies the other branch of 1956.

24        THE COURT:  All right.

25        Ms. Magdo, could you just explain to me or just make a

G6AVOLIP

1      record with respect to how that is met here.

2                  MS. MAGDO:  I'm sorry, your Honor.  Just to be clear,

3      how the second subsection part B is met or why --

4                  THE COURT:  How it's qualified as a specified unlawful

5      activity.

6                  MS. MAGDO:  If you would give me just one moment to

7      find the exact statutory site.

8                  THE COURT:  Sure.

9                  MR. DeVITA:  Your Honor, (b)(2) also has subsection

10     (B)(i).  I think clearly that the conduct described by

11     Mr. Olins fits in that category.  I think there are alternative

12     means of committing the same crime; I don't think they are

13     separate crimes.

14                 I know Ms. Magdo has advised me that obstruction of

15     justice is a specified unlawful activity.  I haven't checked

16     that, but I don't think it really is essential to the guilty

17     plea.

18                 THE COURT:  I see.  Because it would satisfy the

19     requirements of subsection (a)(2)(B); is that correct?

20                 MR. DeVITA:  (B), yes.  And (B) -- more specifically,

21     (B)(i) -- I know it's very complicated, small Roman one -- to

22     conceal or disguise the nature, location, source, ownership or

23     control of the specified unlawful activity.

24                 THE COURT:  But even so, I think it still has to

25     qualify as specified unlawful activity within the meaning --

G6AVOLIP

1          MR. DeVITA:  Well, your Honor, I think the evidence is

2     quite clear that there was a fraud committed against the bank.

3     Even if Mr. Olins became aware of it after the fraud had been

4     completed, he was aware that that was the source of the funds,

5     so therefore he was aware that -- even if the obstruction was

6     not a specified unlawful activity, the bank fraud committed by

7     Mr. Neville was.

8          THE COURT:  All right.  Understood.

9          Ms. Magdo, let me know when you've --

10          MS. MAGDO:  I have a very handy chart back at the

11     office that I didn't bring with me.

12          MR. DeVITA:  We discussed this yesterday, your Honor.

13     I took Ms. Magdo at her word.  I was thinking we were going to

14     be under one pigeonhole, she had it under another pigeonhole.

15     I think either way, it's a unitary crime; it's not separate

16     crimes.

17          THE COURT:  All right.

18          To be clear, it's not that I don't trust both of you,

19     but to the extent that I need to confirm that there's a factual

20     basis for the plea, I do want to just satisfy myself.

21          MR. DeVITA:  Absolutely, your Honor.  Probably by

22     virtue of the RICO statute, your Honor, that it incorporates by

23     reference.  But there are several cross-references, which is

24     why --

25          MS. MAGDO:  Oh, found it.

G6AVOLIP

1          MR. DeVITA:  Okay.

2          MS. MAGDO:  In 1956, where it defines specified

3    unlawful activities.  So that would be in subpart --

4          THE COURT:  (a)(7).

5          MS. MAGDO:  (b)(7), I believe.

6          THE COURT:  I think it's (c) actually.

7          MS. MAGDO:  Oh, (c), (c)(7).

8          THE COURT:  Am I right that -- I think Mr. DeVita is

9    right that it incorporates the list of offenses in the RICO

10   statute, Section 1961, subsection one, and that that includes

11   Section 1956.  Does that --

12         MS. MAGDO:  Exactly.  So the large A says that

13   specified unlawful activity means any act or activity

14   constituting an offense listed in Section 1961(1) of this title

15   and then if we turn to Section 1961(1), it defines racketeering

16   activity and it includes Section 1503 relating to obstruction

17   of justice, and that's the offense underlying the conspiracy.

18         MR. DeVITA:  I see that, your Honor, and I concur.

19         THE COURT:  Excellent.

20         MR. DeVITA:  Almost at the bottom of the column under

21   1961 one.

22         THE COURT:  Correct.  Very good.  Thank you.

23         MS. MAGDO:  You're welcome.

24         THE COURT:  Sorry to be a stickler, but it comes with

25   the job.

G6AVOLIP

1          All right.  Do both counsel agree that there is a

2     sufficient factual basis for a guilty plea to Counts One and

3     Five?

4          MS. MAGDO:  Yes, your Honor.

5          MR. DeVITA:  Yes, your Honor.

6          THE COURT:  And does either counsel know of any reason

7     why I should not accept the defendant's plea of guilty to those

8     counts?

9          MS. MAGDO:  No, your Honor.

10         MR. DeVITA:  No, your Honor.

11         THE COURT:  Mr. Olins, because you acknowledge that

12    you are, in fact, guilty of the crimes charged in Counts One

13    and Five of the indictment, because I am satisfied that you

14    know of your rights, including your right to go to trial, that

15    you understand the consequences of your plea, including the

16    sentence that could be imposed upon you, and that you are

17    knowingly and voluntarily pleading guilty, I hereby accept your

18    guilty plea and enter a judgment of guilty on Counts One and

19    Five of the indictment.

20         The probation department will want to interview you in

21    connection with its preparation of the presentence report that

22    I mentioned earlier.  If you choose to speak with the probation

23    department, it is absolutely essential that anything you say is

24    truthful and accurate.  Among other things, that report is

25    important to me in deciding what sentence to impose upon you

G6AVOLIP

1    before sentencing you, and your lawyers will have an

2    opportunity to review the report.  I would urge you to review

3    it with care.  If there are any mistakes in the report or

4    anything that you wish to bring to my attention in connection

5    with your sentencing, that you share that with your lawyers so

6    that they can bring them to my attention in the proper fashion.

7              Do you understand that?

8              THE DEFENDANT:  I do.

9              THE COURT:  Mr. DeVita, do you wish to be present in

10   connection with any interview?

11             MR. DeVITA:  Yes, your Honor.

12             THE COURT:  I order that no interview take place

13   unless counsel is present.

14             Sentencing will be set for September 21st of this year

15   at 3:30 in the afternoon.

16             I direct the government to provide the probation

17   department with its factual statement of the offense within

18   seven days.  Defense counsel must arrange for the defendant to

19   be interviewed within the next two weeks.

20             In accordance with my individual rules and practices,

21   defense submissions for purposes of sentencing are due two

22   weeks prior to sentencing.  The government's submission is due

23   one week prior to sentencing.  If either party does not intend

24   to make a substantive sentencing submission, which would

25   surprise me here, then you should file a letter to that effect

G6AVOLIP

1     just so that we know and don't need to track you down.

2              Ms. Magdo, any objection to the present bail

3     conditions being continued through the date of sentencing?

4              MS. MAGDO:  No objection.

5              MR. DeVITA:  Your Honor, if I may, I wonder if we

6     could move the sentencing back -- I have a trial beginning

7     before Judge Wood on September 12, and I may still be on trial

8     by the 21st -- perhaps one more week, if that's acceptable?

9              THE COURT:  Sure.  We'll make it September 29th at

10    3:30 in the afternoon.

11             All right.  Mr. Olins, you should understand that your

12    present bond conditions will continue through the date of

13    sentencing; and that any violation of those conditions would

14    not only have an effect on your bail status, but also may have

15    serious consequences for you come the time of sentencing.

16             Do you understand that?

17             THE DEFENDANT:  I do.

18             THE COURT:  Ms. Magdo, did you want to say something

19    about that date?

20             MS. MAGDO:  No.  I wanted to say something about a

21    consent preliminary order of forfeiture, but perhaps we're not

22    there yet.

23             THE COURT:  I'll give you an opportunity in a moment.

24    Wait your turn.

25             You should also understand, Mr. Olins, that you must

G6AVOLIP

1    be in this courtroom on the date and time that I set for

2    sentencing and you should stay in touch with Mr. DeVita to

3    learn if that date and time changes in any way.  If you are not

4    present at the time that I have set for your date for

5    sentencing, you will be guilty of a separate crime and may well

6    be subject to punishment above and beyond the punishment that

7    you receive in connection with the plea you just entered.

8             Do you understand that?

9             THE DEFENDANT:  I do, your Honor.

10            THE COURT:  All right.

11            Ms. Magdo, now, anything else?

12            MS. MAGDO:  We have a consent preliminary order of

13    forfeiture signed by the parties that we would like to pass up

14    for your Honor's consideration.

15            THE COURT:  All right.

16            Would you hand that to Ms. Smallman and I'll take a

17    look at it.

18            Mr. DeVita, any objection to my signing and docketing

19    this?

20            MR. DeVITA:  No, your Honor.  My client and I have

21    both signed it.

22            THE COURT:  All right.

23            I have signed that and will have it docketed.

24            Anything further from your end, Mr. DeVita?

25            MR. DeVITA:  No, your Honor.  Thank you.

G6AVOLIP

1                THE COURT:  All right.

2                I wish you all a pleasant weekend.

3                We are adjourned.  Thank you.

4                MS. MAGDO:  Thank you, your Honor.

5                              *    *    *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25